## SUPERIOR COURT.

### HOYT agt. THE AMERICAN EXCHANGE BANK.

The provisions of the Revised Statutes in relation to a *discovery* of books, papers &c., have not been superseded by § 388 [*Sec.* 341 *and* 342] of the Code. The two systems may stand together, as not being inconsistent with each other either as to the mode of making a discovery, or the powers of the court, if a discovery be refused.

If in answer to an order for discovery and inspection, or for sworn copies of books, papers, &c., the opposite party denies fully and explicitly that there are any such entries, books or papers under his control, that is an end of the application. He can not be subjected to a fishing examination.

The court has no right under the rules adopted to execute the power conferred by the Revised Statutes, or under the Code, to direct a discovery to be made by appointing a *referee to ascertain and report*, whether an order directing a discovery previously made and executed, has been fully complied with; and that the referee have power to examine and personally inspect all the books, papers and documents, &c., and to examine witnesses in relation thereto, &c.

On the return being made to the first order, the petitioner, if he deems it insufficient, should apply for an order that the opposite party *show cause* at a certain time why the particular deficiencies or omissions alleged should not be supplied.

The mode of making applications for discovery, &c., under the Revised Statutes and the Code, stated.

*General Term*, 1853, OAKLEY, *Ch. J.*, PAINE, CAMPBELL, and BÓSWORTH, *Justices.* By an order at special term of the 10th January 1853, the defendants were required to give to the plaintiff, within twenty days, &c., "sworn copies of all entries contained in any books, and of all papers and documents in their possession, or under their control, in reference to, or showing when, under what circumstances, for what purpose or consideration, and by or from what person or persons a *post note* and some Indiana bonds, particularly described, were transferred, or delivered to, or into the possession of the defendants," and directing that such copies be sworn to by the defendants' cashier. The cashier was designated as the officer to verify the papers, at the instance of the plaintiff.

Copies of various entries and papers were furnished as a com-

pliance with this order, and the cashier by affidavit deposed, that the papers so furnished were correct copies of all entries contained in any books of the said defendants, and of all papers and documents in their possession or under their control, in reference to or showing when, &c., following the terms of the order; "that diligent search has been made by this deponent for all entries in the books of the said defendant, and for the papers and documents referred to in the order above mentioned."

. On the coming in of this return, plaintiff's attorney, on an affidavit that the return, in his judgment and belief, was an " evasion of said order of discovery, and a total failure to comply with the true intent and meaning of the same," and on the original papers, the return and such affidavit, moved for a more full and perfect discovery.

On such motion, the order appealed from was finally entered on the 9th of April 1853. That order referred it to a " referee, to ascertain and report whether the said defendants have made the discovery required by the said order of the 10th of January last, and whether any and what further discovery should be made by them under the said order, and to that end to examine and inspect personally, all the books, papers and documents now in their possession or under their control, containing entries or statements in reference to the discovery ordered and required by the said order of tenth of January last, or of which sworn copies should be given under the said order, and that the said referee have power to examine such witnesses as may be produced before him in relation to such books, papers and documents, proving their existence or identity, and that he have power to cause such books, papers and documents to be produced and exhibited to him, at the banking house of the said defendants for his personal examination at such time as to him may seem proper, having regard to the business of the said defendants, that he may ascertain and determine whether the said defendants have by their said return complied with the said order of the 10th of January last and made the. discovery required thereby, or whether sworn copies of any entries therein should be furnished to the plaintiff in addition to such as may have already been furnished by said return, and the said defendants are hereby ordered to produce to the said referee, all

Hoyt agt. American Exchange Bank.

such books, papers and documents in their possession or under their control, as he may require on the said investigation."

From this order the defendants appealed to the general term

The respondent insisted that it was a matter of discretion with the judge, whether he would order the reference or not, and that such an order was not appealable.

That a reference might be made " when a question of fact, other than upon the pleadings, shall arise upon motion or otherwise, in any stage of the action."

The appellant insisted that the return was a full and perfect compliance with the order of the 10th of January. That if the return was deemed or shown to be defective, a further return, and not a reference, should have been ordered; and that nothing was presented to the court, tending to show that the return made was not full and complete.

J. H. TITUS, *for Appellants.*

S. SANXAY, and J. HOYT, *in person, for Respondent.*

By the Court, BOSWORTH, Justice.—Applications to compel a discovery, or that an inspection and copy of books, papers and documents be given, are becoming quite numerous. It is important that the views which govern the action of the court in these proceedings should be distinctly stated, in order that the cases in which a discovery may be made, and the manner in which it will be ordered to be made, may be understood.

This court does not consider that the provisions of the Revised Statutes in relation to a discovery of books, papers, &c., have been superseded by § 388 [§ 341 and 342] of the Code, but that the two systems may stand together, as not being inconsistent with each other, either as to the mode of making a discovery, or the powers of the court, if a discovery be refused.

If a party applies under the Revised Statutes, and makes a case provided for by them and the rules made under them, he has a right to a discovery. The court will exercise its discretion in specifying the manner in which it is to be made. In ordinary cases, and unless indispensable to protect the rights of the party applying, it will not order an inspection to be given, or a deposit to be made.

Sworn copies of books, entries, or of papers and documents, to the discovery of which the applicant shows a right, will be ordered to be furnished.

Enough must be stated to justify a presumption, that entries, papers or documents relating to a specified subject matter exist, are in the possession or control of the other party, and that they will tend to establish some claim or defence of the party asking for the discovery; and that they are not in his possession or under his control (*Rule 9, Supreme Court*).

If in answer to the order, the opposite party denies fully and explicitly that there are any such entries, books or papers under his control, that is an end of the application.

He can not be subjected to a fishing examination or investigation, with a view to ascertain the fact, whether he has or has not books, papers or documents which may contain evidence relating to the merits of the action, or of the defence, unless he is examined as a witness, so that his deposition may be made evidence as well for as against him (*Code*, § 389 [*sec.* 349]).

The Revised Statutes enacted that the Supreme Court in prescribing, by general rules, the cases in which such discovery may be compelled and the proceedings for that purpose, where the statute had not regulated the same, should " be governed by the principles and practice of the Court of Chancery in compelling discovery, except that the costs of such proceedings shall be always awarded in the discretion of the court" (2 *R. S.* 199, § 31 [*sec.* 22]).

According to the practice of the Court of Chancery it was necessary to set forth in the bill the particulars of which the discovery was sought. The opposite party was not required to answer vague and loose surmises. An averment that the matters as to which a discovery was sought were material to the defence, was not sufficient. It was requisite to so state the case, that the court could see how they might be material on the trial of the suit at law.

As soon as the answer was perfected the defendant might move for costs, and to dissolve any injunction that had been granted, staying proceedings at law until the discovery was made.

It was almost a matter of course to grant both motions, unless before the bill was filed he had been applied to for the discovery and had refused to make it, in which case costs were not allowed to him (2 *Barb. Ch. Pr.* 106, 111, 115.).

The practice in case of applications under the Revised Statutes is deemed to be well settled (18 *Wend.* 529; 2 *Sand. S. C. R.* 662).

The applicant must state the particulars of which a discovery is sought, and enough to satisfy the court that it is in the power of the opposite party to furnish it, and that it is material for the support of the claim or defence of the applicant that it should be made.

If the party answer distinctly and unevasively, that as to all or any of the papers or documents or entries, of which a discovery is sought, that there are no such papers or documents in his possession or under his control, and that there are no entries relating to the specified subject matter, or except such as he has furnished copies of, the applicant must abide by the answer so far as the proceedings for a discovery are concerned. If dissatisfied with the result of the proceedings, he must examine him as a witness, or rely on such other evidence as he may be able to command.

He has no right to have a general inquisitorial examination of all the books, papers and documents of his adversary, with a view to ascertain if perchance something can not be found which will possibly aid him.

The order appealed from appoints a referee to ascertain and report whether the order of January 10, 1853, has been fully complied with, and to that end purports to give him power " to examine and personally inspect all the books, papers and documents" now or heretofore in the possession or under the control of the defendants " containing entries or statements in reference to the discovery," and to examine witnesses in relation to such books, papers and documents, to prove their existence or identity, and to compel such books and papers to be produced and subjected to his personal examination.

. We are satisfied that the court has no right, under the rules adopted, to execute the power conferred by the Revised Statutes,

or under the Code, to direct a discovery to be made in the manner directed by the order of the 9th of April, or such proceedings as are provided for in that order to ascertain whether an order directing a discovery has been fully complied with. If rules 8, 9, 10 and 11, are to be regarded as regulating the practice in applications under the Revised Statutes only, and as having no reference to proceedings under § 388 of the Code, then a discovery can be directed to be made in only one of the modes specified in rule 10.

The Code (§ 388) authorizes the court or a judge thereof, " in their discretion," to " order either party to give to the other, within a specified time, an *inspection* and copy, or permission to *take a copy* of any books, papers and documents in his possession, or under his control, containing evidence relating to the merits of the action, or the defence therein."

Giving permission to take a copy, is necessarily giving power to inspect, as a copy can not be made without inspecting the book, paper or document to be copied.

The only discretion which the court can exercise, under this section of the Code, is in determining whether it will order an *inspection* to be given at all. If it grants a discovery under this section, it has no discretion in directing the manner in which it is to be made. An inspection is to be given at all events, and the only alternatives that can be presented to the party against whom the motion is made are, to either give a copy, or submit to the inconvenience of allowing the petitioner to make a copy

If either party applies under the Code, he should be required to make a case as strong and urgent as is deemed necessary to entitle him to a production and deposit of books, papers and documents, instead of sworn copies. Neither reason, principle or policy, demands that a party's books and papers, or any part of them, should be submitted to the inspection of his adversary, when the court would not order them to be deposited in order that they might be inspected. Such an order should be made only in those cases in which one for production and deposit would be granted, unless an inspection was ordered as a substitute for deposit, on the sole ground that a deposit and production would be a substantial inconvenience to the owner of the books;

papers and documents, and would be of no benefit to the applicant beyond that which an inspection would confer.

Where the sworn copies furnished in obedience to an order for a discovery indicate that the discovery may not be complete, it is proper for the petitioner to apply for a further order based on the return and previous proceedings, or on them and further affidavits, for an order requiring the opposite party to show cause at a time to be named why sworn copies should not be furnished of such other entries, papers or documents relating to the points as to which a discovery had been ordered, as the return and other papers may induce the court to believe to be in his possesion or control, and unless the possession or control of such papers and documents, or the existence of such entries be explicitly and unequivocally denied, a peremptory order would be granted.

The return made in this case, contains among other things four resolutions passed by the defendants on the 23d of March 1840, the first two of which would seem to clearly relate to the Indiana bonds.

The third is as follows, viz : " *Resolved*, That S. Draper Jun. and others' *proposition* be laid on the table." The immediately preceding and succeeding resolutions imply that the proposition related to the same bonds, and the natural inference would be that the proposition was in writing. It may be that the cashier in the return sworn to by him, intended to have it distinctly understood that no such paper could be found, and it is possible that the thought of searching for one may not have occurred to him.

We think it would have been proper on the return being made, to have applied for an order that the defendants show cause at a time to be named why a sworn copy of that "proposition," should not be furnished. The order might also have included any other paper, document, book or entry, relating to the matter as to which a discovery had been ordered, whose existence was shown to be probable. In answer to the order to show cause, it would be incumbent on the defendants to show by the oaths of their proper officers, that no such paper, document or entry existed, or if the existence of either was not denied, the defendants would be

ordered to furnish copies, or to submit to the consequences of disobedience.

We think this course should have been pursued instead of making the order appealed from. The proceedings authorized by the order, we do not think warranted by the rules adopted by the Supreme Court, or by the Code, and that the order appealed from should be reversed, without prejudice to the right of the plaintiff to apply for an order to show cause, in accordance with the views we have expressed.

We think it proper that the return should be verified as well by the president as by the cashier.