## *In re* MONROE'S ESTATE.

(*Surrogate's Court, New York County.* May 24, 1889.)

WILLS—PROBATE AND CONTEST—EXPERT EVIDENCE.

It is proper to allow a paper offered for probate as a will to be subjected to a chemical test, in order to disclose the nature of the ink and the process to which it has been subjected.

*E. F. Brown*, for proponent. *Booraem, Hamilton & Beckett*, for special guardian. *Charles A. Flammer*, for Anna M. Monroe and others.

RANSOM, S. This is an application by the special guardian and contestant in this proceeding, which is now pending before the assistant, for leave to photograph the various papers which have been filed as the will of deceased, and to compel the filing of two parts of one of said wills which was executed in triplicate; likewise, that the last paper be subjected to chemical tests for the purpose of disclosing the nature of the composition of the ink and the process or processes to which it has been subjected. Upon the oral argument the surrogate decided the applications first stated in favor of the petitioner, reserving only the question of his power to direct or permit the chemical tests. The special guardian, on the oral argument, stated that he was unable to find any authority for the application. Consultation of the various sources of authority upon the subject of expert testimony, and the various tests for the purpose of establishing or disproving handwriting, has not resulted in the discovery of any authority for granting the application. It is apparent, however, from some of the cases, that such an examination must have been permitted. For instance, in *Fulton* v. *Hood*, 34 Pa. St. 365, expert testimony was received in corroboration of positive evidence to prove that the whole of an instrument was written by the same hand, with the same

ink, and at the same time.  It is inconceivable how testimony of any value could be given as to the character of ink with which an instrument was written, unless it had been subjected to a chemical test.  The writer of a very valuable article in the eighteenth volume of the American Law Register, p. 281, (R. U. Piper, an eminent expert of Chicago, Ill.,) in commenting upon the rule as stated in the case of *Fulton* v. *Hood, supra,* very properly says: "Microscopical and chemical tests may be cômpetent to settle the question; but these should not be received as evidence, I think, unless the expert is able to show to the court and the jury the actual results of his examination, and also to explain his methods, so that they can be fully understood."  The writer of this article is also authority for the statement that in the French courts every manipulation or experiment necessary to elucidate the truth in the case, even to the destruction of the document in question, is allowed, the court, as a matter of precaution, being first furnished with a certified copy of the same.  The most obvious argument to be urged against allowing a chemical test to be made on a will, and one that was suggested by the court on the argument of this motion, is that, inasmuch as the paper may be the subject of future controversy in this or some other tribunal, future litigants should not be prejudiced by any alteration or manipulation of the instrument.  I do not think, however, that this objection is sound.  Take an extreme case, of permitting a sufficient amount of the ink (which the affidavit of the expert shows to be but infinitesimal) for the purpose of chemical examination.  The form of the letter would remain upon the paper.  If not, the form and appearance of the entire signature, might, as a preliminary precaution, be preserved by photography.  The portion of the signature remaining would afford ample material for future experiments and investigations in any subsequent proceedings wherein it might be deemed advisable to take that course.  Because the subject-matter of the controversy may be litigated hereafter should not deprive parties in this proceeding of any rights which they would otherwise have.  They certainly are entitled to all rights in this proceeding that the parties to any future proceedings would have.  Besides, all the parties whose presence would be necessary to an adjudication in, for example, an ejectment proceeding are (or their privies are) parties here.  It certainly cannot be that the law, seeking the truth, will not avail itself of this scientific method of ascertaining the genuineness of the instrument because of some problematical effect upon the rights or opportunities of parties to future litigations respecting the same instrument.  The possibilities of litigation over a will are almost infinite, and, if such a rule should obtain, this important channel of investigation would be closed.  Suppose the same objection were raised to the first action of ejectment which might be brought.  It might then with the same force be urged that parties to some future ejectment suit would be prejudiced by a chemical test of the ink used in the will; and so on, *ad infinitum.*  By not availing itself of this method of ascertaining the truth as to the character of the ink, the court deprives itself of a species of evidence which amounts to practical demonstration.

I can see no reason why the application should not be granted.  "The administration of justice profits by the progress of science, and its history shows it to have been almost the earliest in antagonism to popular delusions and superstitions.  The revelations of the microscope are constantly resorted to in protection of individual and public interests.  *  *  *  If they are relied upon as agencies for accurate mathematical results in mensuration and astronomy, there is no reason why they should be deemed unreliable in matters of evidence.  Wherever what they disclose can aid or elucidate the just determination of legal controversies, there can be no well founded objection to resorting to them."  *Frank* v. *Bank,* 37 N. Y. Super. Ct. 34, affirmed in court of appeals, 84 N. Y. 209.