Barrett, J.
The plaintiff was not a partner in the defendants’ firm, but he was not an ordinary employee. He was an important co-worker with the defendants, and his interest had a-direct relation to the profits of the firm. This interest was increased by the profits and decreased by the losses. As .to the speculative account, it was. expressly provided that he should have a specific interest in the profits, and be responsible for a specific percentage of losses.
It ■ is apparent, therefore, that he is entitled to an inspection of the firm books, provided he has made out a prima facie case for the re-opening of the accounts or statements furnished to him from time to time.
Such a prima facie case is, I think, clearly set forth in *183 the rebutting affidavit used upon the previous motion, and made (with other papers) the direct basis of the present motion. Several grave inaccuracies—to use the mildest expression—are pointed out, and, while the defendants seek to explain the plaintiff’s charges in some- particulars, their explanations are not entirely satisfactory. They are certainly not conclusive against the application. One charge in particular is not met at all. I refer to the item of interest. By the agreement, the plaintiff’s percentage of profits was to be ascertained by deducting from the gross profits interest on cash capital at the rate of five per cent., together with interest at the same rate upon the sum of $30,000, representing the approximate value of the defendants’ seats in various exchanges.
It appears that after the new firm was formed on May 1, 1891, the defendants privately arranged to credit themselves with six per cent, upon this $30,000. They also arranged to withdraw their capital, as firm capital, and to credit such capital to their individual accounts as in form a loan to the firm, at six per cent. These interest charges were credited monthly, thus practically effecting compound interest. The defendants make no satisfactory explanation of this wrongful breach of their contract. Indeed, they seem to have concealed their acts in this respect from the plaintiff, and when he accidentally discovered what they had done, and taxed them with it, they vouchsafed no explanation, but simply intimated that it was no affair of his how they arranged their business interests as between themselves. Indeed, this is the position which they deliberately assume upon the present application, for Mr. Edward L. Oppenheim declares in his affidavit that, “ The plaintiff has no concern whatever in the interest or the capital account to which in his affidavit he refers.”
This position is quite untenable. It is true that the plaintiff has no concern with the private arrangements of the defendants, but he has every concern with their bring *184 ing their private arrangements into-the accounts between him and them, and thus unjustly reducing his interest. I do not desire to comment harshly upon these acts, but I must say that, unless they were inadvertent, it is hard to see how they could have been in intention fair. Certainly, settlements based upon their concealment could not be permitted to stand.
It is sufficient, however, for the purpose of this application, that the acts charged-—those just pointed out and others specified in the papers-—-justify the inspection (in part) which the plaintiff seeks. And it is no answer to such an application, founded upon such facts, to say that the plaintiff has had from time to time an opportunity to examine the books. He is not an accountant, and he is not' to be deprived of an expert examination merely because he has at times looked into the books. The inspection is to enable him accurately to frame his complaint. He might, possibly, without an inspection, frame some sort of a complaint, but not such a complaint as the-courts approve of. A complaint founded upon such an examination as he has already made, or might have made, would be a very general and imperfect statement of his case—a statement which might well be attacked as indefinite and uncertain. He is not precluded from an inspection merely because in general terms he might aver certain broad facts justifying a prayer for an accounting. He has ' a right, and it is indeed his duty, to set forth the specific wrongs of which he complains, and to fortify his prayer by distinct allegations as to each matter which may be the subject of adjudication.
The examination should, however, be limited to the period commencing May I, 1891. That was the date of the formation of the new firm, and the plaintiff, at or about that time, gave the old firm a general release except as to certain specific matters referred to in the dissolution agreement. No case is presented justly questioning this *185 release, even prima facie. Whatever wrong is pointed out specifically, relates to the new firm, not to the old.
Nor is a case made out for the inspection of Mr. Oppenlieim’s private letter book. On the contrary, it clearly appears that that book has no real relation to the subject of the present discovery.
The motion should therefore be granted so far as to permit an inspection by the plaintiff, and such expert accountant as he may select, of the defendants’books containing the transactions of the firm between May I, 1891, and April 15, 1893, including all the accounts which, under the dissolution agreement of the old firm, were carried over to the new, and which were excepted from the release given by the plaintiff to such old firm.
Costs to abide the event. Order to be settled on two days’ notice. The order was settled, the ordering part being in the following form :
It IS ORDERED, that within five days from the service upon the defendants’ attorneys of a copy of this order, the defendants produce and deposit with the clerk of this ■court the books and papers of the firm of E. L. Oppenheim & Co., containing the transactions of said firm between May 1, 1891, and April 15, 1893, including all the accounts which, under the dissolution agreement of the old firm of E. L. Oppenheim & Co., were carried ■over to the new firm, and which were excepted from the release given by the plaintiff to such old ■firm, and that said books and papers remain subject to the inspection and copy of the plaintiff herein, and such accountants as he may employ, for the space of twenty days thereafter ; or that, in place of depositing with the ■clerk of this court said books and papers, the defendants may retain the same at their business office, in which case they shall within five days after the service upon their attorneys of a copy of this order, notify the plaintiff’s attorneys of their election to retain said books and papers at their business office, and the same shall thereupon, for *186 the space of twenty days thereafter, be open to the inspection and copy by the plaintiff, and such assistants-as- he may employ, from three until five P. M. on each business day. . ,
Otto Horwitz (Horwitz & Hershfield, attorneys), for the appellants.
I. The plaintiff was not a partner and cannot bring an action for an accounting (Smith v. Bodine,. 74 N. Y. 30; Muller v. Levy, 52 Hun, 123).
II. The application is made in bad faith, and is in the nature of a fishing excursion to ascertain whether the-plaintiff has a cause of action.
“ A party has no right to have a general inquisitorial; examination of all the books, papers and documents of his-adversary with a view to ascertain if perchance something cannot be found which will possibly aid him” (Hoyt v. American Exchange Bank, 1 Duer, 652).
“ Neither at law nor in equity has a party a right to make a general search and examination for evidence-among the private books and papers of his adversary. Such an order might lead to great abuses and be a judicial sanction to a dangerous, vexatious and impertinent meddling with the private business and affairs of another”' (Brevoort v. Warner, 8 How. Pr. 321).
“There is no necessity.that he should be permitted to-examine the defendants’ books at large ” (Heinemann v. Waterbury, 5 Bosworth, 686).
“ If a party answers distinctly and unevasively that as to all or any of the papers or documents or entries of which a discovery is sought that there are no such papers or documents in his possession or under his control, and *187 that there are no entries relating to the specified subject matter, except such as he has furnished copies of, the° applicant must abide by the answer so far as the proceedings-for a discovery are concerned. If dissatisfied with the-results of the proceedings, he must examine him as a witness or rely-on such other evidence as he may be able to command. He has no right to have a general inquisitorial examination of all the books, papers and documents of his adversary, with a view to ascertain if, perchance, something cannot be found which will possibly aid him ” (Hoyt v. American Exchange Bank, 8 How. Pr. 89, 93).
*186 It is further ordered, that the plaintiff have until twenty days from the time of the conclusion of the inspection, as hereinbefore provided, to serve his complaint herein, with ten dollars costs to abide the event of this action.
The defendants appealed to the General Term.
*187 A party cannot be subjected to a fishing examination or investigation with a view to ascertain the fact whether he has, or -has not, books, papers or documents which may contain evidence relating to the merits of the action, or of the defense, unless he is examined as a witness, so that his deposition may be made evidence as well for as against, him (Hoyt v. American Exchange Bank, 8 How. Pr. 93).
In Commercial Bank of Albany against Dunham, 13 How. Pr. 541, 543, in the opinion of Harris, J., a petition for an order for discovery of books, there appears the following quotation from an opinion of HOFFMAN, J.: “ If the discovery is plainly attainable by the examination of the party as a witness, it should be refused. Where the testimony sought appears attainable from the oath of the party examined as a witness, there is an additional reason for not resorting to the delicate and often dangerous source of' evidence, an inspection of private books. The unlimited exercise of such a power, it has well been said, would open every muniment room in the land, and every merchant’s, accounts, and every man’s private papers, to the inspection of the merely curious. .
“ They ask for license to search at their own pleasure all the books in which all the transactions of the defendants have been recorded for a - period of (eight) years,, however diversified or extensive they may have been, in the expectation that, somewhere within the wide range,. *188 they may find some evidence that will aid them in sustaining the issue in this cause upon the trial.”
In Dickie v. Austin, 4 Civ. Pro. R. 123, McAdam, J., says : “ On an application for an inspection of books, the petition must state what information is wanted, and that the books an inspection of which is sought contain such •information. It is not enough to show that they probably will furnish the desired information, and an application for the discovery of documents was denied where the petition did not point to the places where the information sought for existed, nor describe the entries, except by stating their supposed effect. * * * If the discovery is plainly attainable by competent and available testimony, a production of books should not be allowed without special circumstances.” Petition should be dismissed on the ground that it does not point to the places where the information sought for existed, nor describe the entries (New England Iron Co. v. N. Y. Loan & Improvement Co., 55 How. Pr. 351, 352).
It would seem that the plaintiff has information to prepare his complaint herein. After the issues have been framed, if it should appear to the court necessary for the plaintiff in preparing for trial to avail himself of an examination, such relief can then be granted ; but we think that thére is no reason for the granting of this order now, as it is - undoubtedly intended as a .fishing excursion to 'ascertain- whether the plaintiff has any cause of action upon which he might reasonably hope to succeed -(Nathan v. Whitehill, 22 N. Y. Supp. 63).
III. The order should certainly at least be modified, if not reversed.
Edward C. Perkins, for plaintiff, respondent.
O’Brien, J.*
Little need be added to the opinion of the learned judge at Special Term, showing the reasons *189 and necessity for the order appealed from. The appellant insists that the judge, though he concluded that the plaintiff was not a partner, overlooked the statement in the plaintiff’s affidavit alleging that his action was brought for an accounting, which he could not maintain in view of nis relation to the defendants as an employee, or at best a co-worker. It is hardly just, however, to seize upon one expression in an affidavit, particularly where all the facts are presented to the court showing the character in which the plaintiff sues. The agreement with the defendants, which is set forth, shows that he was employed under an arrangement which would give him, in lieu of salary, a certain percentage of the profits of the business, which from time to time was increased.
In the leading case of Smith v. Bodine (74 N. Y. 30), it was held that under such an agreement, which did not constitute the plaintiff a partner, he could not bring a suit in equity for an accounting, but was left to his action at law. This circumstance, however, instead of being an obstacle, seems to us an additional reason why the inspection should be allowed. In an action at law it will be necessary for the plaintiff to state the amount which he seeks to recover, and unless such amount can be ascertained from an inspection of the books, plaintiff will not be in a position to know just what sum he is entitled to sue for. In such an action at law, an account between the parties at some stage of the proceeding is practically taken, and this, no doubt, is what was intended to be expressed by the statement in the plaintiff’s affidavit that his action was brought for an accounting and settlement, because we cannot assume that he was to commence an action in form for an accounting which, under the case-above cited, would not lie.
The suggestion" that the application is made in bad faith, and is in the nature of a fishing excursion, we think" is sufficiently answered by the opinion of the court below. In this connection, and upon the subject of the right to *190 an inspection in general, we are referred to cases wherein it has been held that such motions should be granted with reluctance, and only in cases of necessity, and that it is the practice, except in a clear case, to deny such applications. We. have no fault to find with such decisions, or with the proposition of law thus appealed to, but we have had occasion frequently to say that in all these applications each must stand upon its own footing and be determined by the merits involved in the particular application. The Code is authority for the right in a proper case to have an inspection, and a moment’s reflection will show that there are cases which maybe divided into classes, in one of which such right is more readily granted, and in another more uniformly denied.
As an instance of the former may be cited the usual action between partners for an accounting, in which an inspection is permitted almost as a matter of course. As an instance of the latter class might be cited cases wherein the person suing has no relation to the defendant or his business, and has no right growing out of any relation to an inspection of his books. In such cases, unless it clearly appears either that the evidence sought is necessary for the purpose of framing a complaint, or is essential to the establishment of the plaintiff’s case upon the trial, and cannot be procured in any other way, such application will be denied.
We think, however, there is a third class, of which the present is a good illustration, in which, while the relation between the parties may be that of employee and employer, or co-workers, in one or more aspects it takes on the character of a co-partnership. Here the plaintiff had direct interest in the profits and losses of the business, his percentage being fixed upon the profits, which he was entitled to receive in lieu of salary. Where such relation is admitted, as in this case, whether such relation constitutes the plaintiff a partner, or a principal bringing busi ness to the firm, or an employee entitled to a share of the *191 profits, or a co-worker with them in the general business, we think, as argued by the respondent, that “ so long as the plaintiff in one manner or another, under one name or another, was entitled to a portion of the proceeds of the common venture,” á prima facie case is presented entitling those interested in that venture to an inspection, where necessary, of the books of account containing a record thereof, and to all the information that can be derived from them, and it is only where it is apparent that the application is made in bad faith that such inspection should be denied.
It is insisted; however, that the order, if not refused, should be modified by limiting the number of assistants whom the plaintiff might employ, to the end that it might not result in an abuse of the privilege granted to him by the court, in overrunning the defendants’ office and interfering with their business. In the order itself the alternative is given of depositing the books in court, but as the defendants would probably prefer to retain them in their own custody, the court granting the order would at all times see to it that the privilege was not abused, and upon the facts showing any attempt to abuse it, or to make use of it for other than the purpose for which it was granted, namely, to furnish information to the plaintiff, it would be withdrawn. As we should not assume that the plaintiff intends to abuse the privilege, we do not feel warranted in modifying the order, it being within the defendants’ power, if their fears should be realized, to secure relief from the court.
We think, therefore, that the order should be affirmed, with ten dollars costs and disbursements.
Note on The Power of the Court in an Action of a Legal Nature to Compel Discovery of Books and Papers and the Distinction Between such Dis- • COVERY AND PROCEEDINGS FOR AN ACCOUNTING !
The importance of the case in the text is in the light which it throws on the right to an accounting or a discovery *192 of defendant’s accounts in a class of actions of increasing frequency—viz. actions for percentages, commissions royalties etc. upon a course of dealing like that of a salesman employed for an interest in proceeds of sales, or a patentee licencing for a royalty,—where the debtor party is usually expected to keep accounts, and the creditor party expects to settle according to. those accounts. In the case of the partnership relation each owes to the other a mutual duty of good faith in the accounts ; and each may be compelled to account to the other, and to disclose the accounts he may have kept of partnership transactions. Under royalty and percentage contracts however, it has generally been held that in the absence of special stipulation the debtor party is not bound to hold his accounts open to the inspection of the other, nor liable to an action for an accounting, and that the remedy of the other is to allege a balance due at his peril and prove it if he can by subpoena duces tecum at the trial, or by examination of the defendant before trial. It has sometimes been assumed that the right to discovery and inspection of the books before trial, is only co-extensive with the right to bring an action for an accounting.
The case in the text shows that-this assumption is a mistake. The distinction between an action for the moneys due on an account, and an action to compel an accounting is stated in a note in 28 Abb. N. C. 236. It will be useful in this connection to trace the origin of the power to compel discovery of accounts far enough to show that it exists in all classes of actions, and quite independent of the question whether defendant is bound to account.
1. Power independent of statute.] We find that the practice of the supreme court ordering discovery by virtue of its inherent power to do justice, and without the sanction of a statute was well established before the revised statutes.
Wallis v. Bailey, 19 Johns. 268, (1822) is however the first full opinion on the point. Here the court declared that they had never gone further in directing discovery than shown in the order in Lawrence v. Ocean Ins. Co., 11 Johns., 245, where the order was granted on great consideration and not without some hesitation. The court adds r “The necessity of it, to enable the defendants to defend themselves, was fully shown on affidavit; and we proceed on the principle, that, from the facts shown, the defendant would be entitled, on a bill of discovery, to the information sought for.” [In Lawrence v. Ocean Ins. Co., here referred to, no opinion-on the point was rendered, but the order-required the plaintiff in an action on a marine policy where *193 deviation, seaworthiness, etc., was in question, to disclose all the correspondence and instructions relating thereto.]
In a note in 2 Cow. 593 the reporter collects the English authorities which were followed in this State, and which put the main principle as being that the court would require discovery where the one party held the document iii any sense as a trustee for the other, so that discovery could be had by bill in equity ; as, for instance, where an instrument executed by both parties is not in duplicate,, but left with one of them ; while on the other hand, if an indenture was interchangeably executed, each party having his own duplicate, his loss of it would not entitle him to a discovery of the other.
In Wallis v. Murray, 4 Cow. 399 (1825), the same court went further and held that one who had accidentally lost a duplicate instrument once existing, was entitled to discovery of the duplicate held by the adverse party; and they put this upon the sensible reason that accident is as plain a ground as trust, and that there was no doubt that on a bill of discovery, the plaintiff would be entitled- to its production on oath.
In Bank of Utica v. Hillard, 6 Cow. 62 (1826), an attempt was made to enforce discovery against a corporation. The action was on a promissory note, and the matter asked for was copies of entries in the bank’s books relating to the note. The court adverted to the English practice allowing such applications to the full extent of what defendant would be bound to furnish on a bill of discovery, and said it was-of recent origin in England, adding: “It has not been-, adopted by this court ; and we have often declined to follow it, on motion to compel the party to furnish evidence-in this way against himself, except in certain cases ; as where.the instrument to be inspected or copied is the immediate-foundation of the action ; and in' a few other cases, depend-' ing on peculiar circumstances ” (Citing Willis v. Bailey, 19 Johns. 268, 9).
Exercise of such power against a thirdperson.] In Davenbagh v. M’Kinnie, 5 Cow. 27 (1825), the same means were-attempted to be used to get inspection of a deed in possession of a third person, the action being waste. The court refused the application on the ground that it was made«gainst a third person not interested in the cause and sought to pry into his private papers ; that such application would not be granted even in an action on a contract. The plaintiff must proceed by subpoena duces tecum, or in some other way than by discovery.
But on the other hand, the existence of this power in the *194 court was well asserted in People ex rel Palmer v. Vail, 2 Cow. 623 (1824), where it was held that if a public document which belongs on file as a record in a public office finds its way into private hands, the Supreme Court, when an action is there pending in which the party needs the document for evidence, may interfere summarily upon motion, and order that such third person file the paper. This is part of the inherent power of the court, and its possession is necessary to the principle that the court may order inspection of public documents. Phil. Ev. Edition of 1820, 328, 330. [The Supreme Court of Massachusetts, in a somewhat similar case, went further as against a party to the action, and refused to allow him to use in evidence the instrument which he had illegally taken possession of.]
2. Contract not declared £>».] Willis v. Bailey, 19 Johns. 268 (1822). Where the plaintiff, instead of declaring on the contract specially, declared in general assumpsit on the implied promise of the defendant, defendant was not allowed discovery and inspection.
3. Allegation of forgery.] Brush v. Gibbon, 3 Cow. 18, note (1811). Where the question in issue in a civil action on the contract is the genuineness of the signature, defendant, asserting it to be a forgery, is entitled to have discovery and inspection.
This might'be allowed, notwithstanding the objection on his part that he should not be required to furnish his adversary with the means of convicting him of forgery. Jackson ex. dem. Titus v. Jones, 3 Cow. 17 (1824).
4 Tort.] Denslow v. Fowler, 2 Cow. 592 (1824). Discovery and inspection of the bond, to recover possession of which plaintiff brought trover, and sought on the ground that a description was necessary to enable him to declare, was denied, upon the objection that such an application was unprecedented in an action of tort.
5. Effect of the Statute.] M’Keon v. Lane, 2 Hall, 520 (1829). Held by the New York Superior Court, that the sanction of this practice by the provision adopted in the Revised Statutes (1 R. S. 200, § 21; 3 Id. 6 ed. 224, § 104, re-enacted in Code Civ. Rro.,% 803) is neither penal nor imperative, but remedial, and applications rest in the discretion of the court to be exercised according to circumstances.
And the court on that view refused even under the express sanction of discovery by the Revised Statutes to order discovery simply for the purpose of giving the party a copy to use as secondary evidence in a case where he might doubtless give other secondary evidence. Here, in an action against a witness, for disobeying a subpoena duces *195 tecum, discovery of the original subpoena, which had been served instead of a copy, was denied, even though the applicant had no copy in his possession or under his control.
But in Townsend v. Lawrence, 9 Wend. 458 (1832), the Supreme Court held, that the provision of the Revised Statutes extended the previous practice so as to allow discovery not only of documents which constitute the cause of action, but of any and all books, papers and documents relating to the merits of the suit or the defense. Accordingly, in an action "on the general count in indebitattis ■assumpsit brought against the defendants who were members of an unincorporated association or joint stock company,— held, that the original articles of association and letters by some defendants to others authorizing subscription to the stock (being wanted to show membership) could be ordered to be discovered, although the declaration was not founded on a written contract and plaintiffs applying showed no interest in the papers.
And this case of Townsend v. Lawrence, 9 Wend. 458, was followed and approved in Arnold v. Pawtucket Water Co. (R. I. 1893), 26 Atl. Rep. 55, citing also other cases.
From these cases it will readily be seen that the right •of discovery and inspection may be exercised with perfect freedom irrespective of whether the action is for equitable or legal relief. Other cases and the present practice will be found indicated in 2 Abb. N. Pr. & Forms. 418.
6. Interest in the documents /privacy of accounts?^ It will be seen that the statutory provision embodied in the Revised Statutes, and continued in the Code, goes far beyond the original practice of Chancery in that it allows discovery of ■documents in which the applicant had no interest, his only right being in the fact that they may be useful to him as •evidence. The rule to this extent is freely applied by the courts wherever the document is one which relates simply to the controversy in the action, and it is also applied with ■equal freedom to single documents where no reasonable •objection on the ground of privacy is suggested, as, for instance, in the case of an application for a- discovery oí •defendant’s articles of co-partnership, in order to enable plaintiff to determine who may be joined as defendants in the action ; but where the application is to discover entries in account books, the law has due regard to the great injustice that may be done by allowing a general survey of accounts at large, under the pretext of discovering specific items or entries affecting only the particular parties to the suit. In *196 -this class of cases, therefore, it is customary still to apply something of the principle which formerly limited discovery of documents in equity, and to consider the question whether the plaintiff has any right or-interest in the books- and papers constituting the account as such. Thus the right of a principal to have discovery of books and vouchers of his agent rests on stronger grounds than the claim of an ordinary party to the inspection of the books of an adversary. Manley v. Bonnel, 11 Abb. N. C. 123; Duff v. Hutchinson, 19 Weekly Dig. 20; s. p. Inyo Consolidated Mining Co. v. Pheby, 49 Super. Ct. 392; Allen v. Allen, 33 State Rep. 876; Harding v. Field, 46 Id. 628.
On the other hand, an agent’s or employee’s application for discovery of his principal’s or employer’s books is not so-readily granted. Dickie v. Austin, 65 How. Pr. 420; Perls v. Metropolitan Life Ins. Co., 32 State Rep. 44; Harbison v. Von Volkenburgh, 5 Hun, 454; Bridgman v. Scott, 36 State Rep. 982.
7. Instrument pleaded^ But irrespective of the existence or non-existence of any such interest or relation, the principle is now well recognized that a party is not confined in seeking discovery to asking for evidence to support his own case ; but so far as his adversary has in his pleading set up the existence and relied on the effect of a document inter-weaved in his case, an application to compel such adversary to make discovery and allow inspection of it may be-granted if necessity is shown. Seligman v. Real Estate Trust Co., 20 Abb. H. C. 210.
8. Things other than documentsl\ The power of discovery here under consideration is held to extend to documents of all kinds, and “ document ” in the law of evidence includes whatever may be read, i.e., inscriptions which communicate-information, whether in books or on paper, parchment, or other material. It does not, however, extend to other articles, such as merchandise. Ansen v. Tuska, 19 Abb. Pr. 391; Downey v. MacAleenan, 42 State Rep. 672; s. c., 16 N. Y. Supp. 916.
It has recently been held (though not'in connection with an ordinary application for discovery in a civil action, but ii* a special proceeding for 'the probate of a will), that the court have power to require papers filed by a party as originals to be photographed, and also to allow the ink to be submitted to chemical tests in order to determine whether such, papers were forged or genuine, the question of authenticity being in issue. Monroe’s Estate, 23 Abb. N. C. 83.
To recapitulate :—In the language of chancery “ Discov *197 ery ” included both the responding to interrogatories which called for testimony of defendant, and the production of documents by him. The Legislature in 1830 reduced the necessity of filing bills for' discovery by giving the late Supreme Court power to compel discovery to be made by producing documents (2 N. Y. R. S. 199, § 21), but not by answering interrogatories. Hence, the phrase “ discovery and inspection,” or, more shortly, “ discovery,” was used in the common law courts to mean only a discovery of writings.
When the Code of Procedure was adopted, bills of discovery were abolished, and the right to examine the adverse party as a witness before trial, was substituted (note to Glenney v. Stedwell, 1 Abb. N. C. 327, 332), and by the Code of Civil Procedure (in 1876) the regulations as to this oral discovery—called now “ examination before trial ’’—were merged with those regulating the taking of depositions of witnesses not parties (N. Y. Code Civ. Pro., § 872). Thus it has come about that<l discovery ” is now often used to mean discovery of documents ; and “ examination before trial ” is used to mean examination by oral interrogatory, whether for the purpose of discovery, or for the purpose of using the answer like the deposition of a witness at the trial.
The Statute. A party to a suit (the Rev. Stat. said, in the Supreme Court ; the Code says, in a court of record other than a justice’s court in a city) may be compelled to produce and discover books, papers and documents in his possession or power, relating to the merits of any such suit, or of any defense therein, as evidence (and the Code adds : to compel giving a copy or permission to take a copy). 1 R. S. 200, § 21, etc.; 3 Id. 6th Ed. 224, § 104, etc.; N. Y. Code Civ. Pro., § 803, etc.
For the General Rules of Practice, see Rules 14, 15, 16 and 17.

Present, Van Brunt, P. J„ and O’Brien and Follett, JJ.